Kimberly L. Hynes, appellee, v.
Good Samaritan Hospital,
a Nebraska nonprofit
corporation, appellant.

___ N.W.2d ___

Filed September 4, 2015.    No. S-15-002.

1. **Workers' Compensation: Appeal and Error.** Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2014), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

2. ____: ____. Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence.

3. **Workers' Compensation: Evidence: Appeal and Error.** Admission of evidence is within the discretion of the Workers' Compensation Court, whose determination in this regard will not be reversed upon appeal absent an abuse of discretion.

4. **Expert Witnesses.** Expert testimony should not be received if it appears the witness is not in possession of such facts as will enable him or her to express a reasonably accurate conclusion, as distinguished from a mere guess or conjecture.

5. **Trial: Expert Witnesses.** It is within the trial court's discretion to determine whether there is sufficient foundation for an expert witness to give his or her opinion about an issue in question.

6. **Workers' Compensation: Proof.** In order to recover under the Nebraska Workers' Compensation Act, a claimant has the burden of proving by a preponderance of the evidence that an accident or occupational disease arising out of and occurring in the course of employment

proximately caused an injury which resulted in disability compensable under the act.

7. **Workers' Compensation: Mental Health.** A worker is entitled to recover compensation for a mental illness if it is a proximate result of the worker's injury and results in disability.

8. ____: ____. A claim for a psychological or mental condition requires that the mental condition must be related to or caused by the physical injury.

9. ____: ____. An injury caused by a mental stimulus does not meet the requirement that a compensable accidental injury involve violence to the physical structure of the body.

10. **Workers' Compensation: Appeal and Error.** On appellate review of a workers' compensation award, the trial judge's factual findings have the effect of a jury verdict and will not be disturbed unless clearly wrong.

11. **Workers' Compensation.** As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given their testimony.

12. **Trial: Proximate Cause.** The determination of causation is ordinarily a matter for the trier of fact.

13. **Workers' Compensation: Words and Phrases.** When the question is whether compensability should be extended to a subsequent injury or aggravation related in some way to the primary injury, the rules that come into play are essentially based upon the concepts of "direct and natural results."

14. **Proximate Cause.** A cause of an injury may be a proximate cause, notwithstanding that it acted through successive instruments of a series of events, if the instruments or events were combined in one continuous chain through which the force of the cause operated to produce the disaster.

15. **Workers' Compensation: Evidence: Appeal and Error.** In testing the sufficiency of evidence to support findings of fact made by the compensation court after rehearing, the evidence must be considered in the light most favorable to the successful party and the successful party will have the benefit of every inference reasonably deducible from the evidence.

16. ____: ____: ____. If the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, an appellate court is precluded from substituting its view of the facts for that of the compensation court.

17. **Workers' Compensation: Expert Witnesses.** It is the role of the Workers' Compensation Court as the trier of fact to determine which, if any, expert witnesses to believe.

18. **Workers' Compensation: Mental Health: Evidence.** Where the evidence is sufficient to permit the trier of fact to find that a psychological injury is directly related to an accident and the employee is unable to work, the employee is entitled to be compensated.

Appeal from the Workers' Compensation Court: Michael K. High, Judge. Affirmed.

Thomas D. Wulff, of Wulff & Freeman, L.L.C., for appellant.

John C. Fowles, of Fowles Law Office, P.C., L.L.O., for appellee.

Heavican, C.J., Wright, Connolly, McCormack, Miller-Lerman, and Cassel, JJ.

Wright, J.

## NATURE OF CASE

Good Samaritan Hospital (Good Samaritan) appeals from an award entered by the Nebraska Workers' Compensation Court on November 24, 2014. The court found the claimant, Kimberly L. Hynes, sustained a 100-percent loss of earning power due to psychological injuries resulting from three assaults that occurred in the course of her employment at a hospital. Good Samaritan contends that Hynes failed to produce sufficient evidence to sustain the award, that the Workers' Compensation Court improperly connected noncompensable injuries to the compensable injury, and that the compensation court should have excluded the psychiatric report of Hynes' expert from evidence.

For the reasons discussed below, we affirm the findings and award of the Workers' Compensation Court.

## SCOPE OF REVIEW

[1-3] Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2014), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there

is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Lagemann v. Nebraska Methodist Hosp.*, 277 Neb. 335, 762 N.W.2d 51 (2009). Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence. *Giboo v. Certified Transmission Rebuilders*, 275 Neb. 369, 746 N.W.2d 362 (2008). Admission of evidence is within the discretion of the Workers' Compensation Court, whose determination in this regard will not be reversed upon appeal absent an abuse of discretion. *Olivotto v. DeMarco Bros. Co.*, 273 Neb. 672, 732 N.W.2d 354 (2007).

## FACTS

This is the second time the case has been before this court. In *Hynes v. Good Samaritan Hosp.*, 285 Neb. 985, 830 N.W.2d 499 (2013), we vacated the award because the testimony of the employer's witnesses had been lost due to no fault of either party and, therefore, the record was insufficient to undertake a meaningful appellate review of the case. We remanded the cause for a new trial.

On remand, the parties stipulated that Hynes had been employed as a registered nurse by Good Samaritan in Kearney, Nebraska, and also stipulated to her average weekly wage. Hynes alleged that she suffered from posttraumatic stress disorder (PTSD) and depression as a result of three incidents which occurred in the course of her employment as a nurse in the mental health unit of Good Samaritan and that these incidents left her unable to work.

On April 16, 2008, a patient "whipped" Hynes several times with a large vacuum cleaner cord and punched her in the jaw. Hynes suffered bruising and substantial pain as a result of the assault. This was the only incident for which Hynes sought medical treatment for a physical injury.

Following this incident, Hynes tearfully discussed the assault with an employee assistance program counselor, Roni Norman. She reported having difficulty eating and sleeping following the assault and stated she did not feel safe returning to the adolescent unit. On April 23, 2008, Hynes again visited Norman. Hynes was tearful and described experiencing feelings of extreme hypervigilance and sensitivity to noises and movement, as well as nightmares and disturbing dreams. Followup meetings between Hynes and Norman on May 22, May 28, and June 2, revealed Hynes' increasing feelings of hopelessness and helplessness, flashbacks, dreams of the assault, strained communication problems, and difficulty functioning in her professional, social, and personal life.

In the meeting with Norman on June 2, 2008, Hynes described a second incident, where she was assaulted by a patient the previous week. Hynes was kicked and was bitten on the arm by a patient. She did not seek medical treatment for the alleged physical injuries.

Following these assaults, Hynes' symptoms worsened severely. On June 11, 2008, Hynes reported to Norman that she had been experiencing panic attacks, hypersensitivity to loud noises, loss of appetite, social withdrawal, and general feelings of anxiety and depression.

On July 6, 2008, Hynes reported a third incident to Norman which occurred while Hynes was working in the male portion of the adolescent/youth unit of the hospital. A male adolescent grabbed Hynes and made "extremely aggressive" sexual comments to her. Hynes did not receive treatment for physical injuries associated with this assault.

On July 20, 2008, Norman received a late night "crisis call" from Hynes, who expressed suicidal thoughts and feelings of hopelessness. Concerned with Hynes' safety, Norman facilitated Hynes' admission to a medical center in North Platte, Nebraska, for treatment relating to anxiety and suicidal thoughts, eating and sleeping disorders, and depression. She was diagnosed with an adjustment disorder with depressed mood and anxiety.

Five days later, Hynes was transferred to Two Rivers Psychiatric Hospital (Two Rivers)—an inpatient treatment facility in Kansas City, Missouri—in order to receive more specialized trauma care. While at Two Rivers, Hynes underwent psychiatric evaluations by two separate doctors and was diagnosed with major depressive disorder and PTSD. She remained hospitalized at Two Rivers until August 8, 2008.

Hynes was admitted to Two Rivers a second time several weeks later for major depressive disorder and PTSD. A psychiatric evaluation was performed by a doctor who had not previously evaluated Hynes. She was diagnosed with major depressive disorder and PTSD with "suicidal ideas and plan." She was discharged on September 12, 2008, but was subsequently readmitted on September 16 and then discharged on October 3.

Later in October 2008, Hynes began treatment at a medical center in Lincoln, Nebraska, for PTSD and depressive disorder. From November 2008 through March 2009, Hynes had multiple hospitalizations for her psychiatric injuries.

Subsequently, Hynes began treatment with a psychiatric group in Lincoln. During the course of this treatment, she was given high doses of numerous medications which ultimately proved ineffective at treating her psychiatric episodes. In March 2009, Hynes began electroconvulsive therapy to treat her depression and PTSD. These treatments were initially administered three times a week. The frequency of the treatments was gradually reduced, but at the time of trial, Hynes was still receiving treatments.

In April 2009, Hynes commenced this action in the Workers' Compensation Court. She alleged that her mental injuries occurred in the course of her employment at Good Samaritan and that the injuries rendered her unable to work. Good Samaritan denied the occurrence of the second and third incidents and alleged Hynes suffered no injury beyond slight bruising from being whipped by a vacuum cleaner cord. It claimed there was insufficient medical causation for the alleged mental injuries of PTSD or depression, for which Hynes sought

compensation. The compensation court found in favor of Hynes. On appeal, we remanded the cause for a new trial based on insufficiency of the record. See *Hynes v. Good Samaritan Hosp.*, 285 Neb. 985, 830 N.W.2d 499 (2013).

Hynes, Hynes' husband, and Norman testified at the second trial. Hynes testified about the three incidents, her subsequent therapy and treatment, and her psychological condition after the incidents. The court also received Hynes' medical records and evaluations.

Good Samaritan conceded that the initial assault on April 16, 2008, involved a physical injury during the scope of Hynes' employment and therefore was compensable under the Nebraska Workers' Compensation Act. However, it claimed that there was no medical evidence of a physical injury in either the second or third incident and that, therefore, any psychological injuries that resulted from them were not compensable. It sought to exclude any evidence relating to the second and third incidents, arguing that neither the second nor third incident was compensable under the Nebraska Workers' Compensation Act and that the evidence was, therefore, irrelevant.

Good Samaritan sought to exclude the report of Paula Malin, M.D., Hynes' expert psychiatric witness. Hynes retained Malin to provide an expert opinion regarding the causation and extent of Hynes' injuries. In her report, Malin opined that Hynes suffered psychological and physical injuries in the April 16, 2008, assault and that the second and third assaults caused cumulative trauma. She also opined that Hynes had been unable to work since July 2008. Malin based her opinions on an in-person evaluation of Hynes and a review of the records of Hynes' psychiatric treatment following the assaults. Good Samaritan claimed that Malin's opinions were not relevant, because they were based in part upon the cumulative effect of the second and third incidents, which Good Samaritan claimed were not compensable under the Nebraska Workers' Compensation Act and therefore irrelevant. The compensation court overruled all of Good Samaritan's relevancy objections.

Good Samaritan also sought to exclude Malin's opinions for lack of foundation. Good Samaritan claimed that Malin lacked the necessary facts to form a reliable opinion, because Hynes was allegedly untruthful about her personal and psychiatric history during her face-to-face interview with Malin. The court overruled Good Samaritan's foundational objection, finding the deficiencies claimed by Good Samaritan went only to the weight and credibility of the opinion.

Good Samaritan offered the testimony of Terry Davis, M.D. Davis, a psychiatrist, opined that Malin's report lacked foundation because it did not specifically reference past trauma—including instances of sexual assault, rape, physical and mental abuse, sexual promiscuity, and counseling for past physical and substance abuse. Davis opined that such trauma was significant in conducting psychiatric evaluations and forming opinions. The court received a report from Howard Entin, M.D., the court-appointed psychiatrist from Colorado. Entin opined that while Hynes had a major depressive disorder, she did not meet the criteria for PTSD and "did not experience an event that was a significant threat to her life at work." Entin suggested that Hynes might have PTSD related to significant preexisting stressors.

The Workers' Compensation Court found that Hynes was a credible witness and generally accepted her testimony regarding the three incidents. The court found that the first incident was an "accident" within the meaning of the Nebraska Workers' Compensation Act, that it left Hynes temporarily totally disabled, and that she subsequently sustained a permanent partial disability to the body as a whole with complete loss of earning power. The court accepted the opinion of Hynes' expert, Malin. It found that Hynes' psychological injury began with the first incident on April 16, 2008, and that the second and third assaults aggravated or cumulatively added to the injury. The court reasoned that the three assaults created "one continuous chain through which . . . the cause operated to produce the totality of mental illness [Hynes] is suffering from."

The compensation court expressly rejected the opinion of Good Samaritan's expert, Davis, and that of Entin, the court-appointed expert. It found that Davis' opinion placed too much emphasis on Hynes' past trauma, much of which occurred 10 to 20 years prior to the incidents in the case at bar. The court noted that Hynes was consistently employed from 1992 through 2008 without significant or relevant physical or mental incident and that during this time, she married and had a family. The court rejected Entin's opinions, partially because he "seemed to be using the burden's [sic] placed upon [a plaintiff in Colorado,] which is a burden not applicable to [t]his case."

The compensation court ordered Good Samaritan to pay Hynes the sum of $578.14 per week for $142\frac{5}{7}$ weeks for temporary total disability, and $644 per week for so long as Hynes remained permanently and totally disabled. Good Samaritan was also ordered to pay past and future medical bills.

## ASSIGNMENTS OF ERROR

Good Samaritan asserts that (1) the trial court erred in finding Hynes suffered physical injury in the second and third incidents, (2) the trial court erred in tying the three alleged incidents together and finding that Hynes' psychological injuries flowed from some combination of them, and (3) the trial court erred in overruling Good Samaritan's objections to the medical report of Hynes' expert witness, Malin.

## ANALYSIS

When considered together, Good Samaritan's assignments of error present two issues. The first issue is whether Malin's opinions had sufficient foundation. Good Samaritan claims that Malin did not possess sufficient facts to form a reliable opinion regarding Hynes' condition.

The second issue is whether the compensation court erred in considering the second and third incidents in its determination of Hynes' disability. Good Samaritan asserts that there was no proof Hynes suffered a physical injury in either the

second or third incident and that, therefore, neither was independently compensable. Consequently, Good Samaritan contends that the court should not have considered these incidents in its analysis and that Malin's inclusion of such incidents in her report makes her opinions irrelevant. This argument suggests that each incident must be independently compensable under the Nebraska Workers' Compensation Act in order to be relevant.

### FOUNDATION FOR
### MALIN'S REPORT

We first address Good Samaritan's foundational objection to Malin's opinions. The compensation court found that Malin's opinions had sufficient foundation and were credible and reliable. The court adopted the opinions as carrying the greater weight of evidential probability with respect to causation, diagnosis, and need for medical care. Good Samaritan claims Malin was unaware of various pertinent facts, such as previous psychological counseling, supposed visual and auditory hallucinations, past work in psychiatric units at hospitals, a past sexual assault, sexual promiscuity, physical and mental abuse by a former fiance, a terminated pregnancy, and Hynes' continued work at Good Samaritan after the first assault. It argues that because Malin did not consider these facts, her opinions were based on insufficient information and, therefore, lacked sufficient foundation and should have been excluded. Good Samaritan claims that without Malin's opinions, Hynes has no evidence of causation and failed to meet her burden of proof.

[4,5] Admission of evidence is within the discretion of the Workers' Compensation Court, whose determination in this regard will not be reversed upon appeal absent an abuse of discretion. *Olivotto v. DeMarco Bros. Co.*, 273 Neb. 672, 732 N.W.2d 354 (2007). Expert testimony should not be received if it appears the witness is not in possession of such facts as will enable him or her to express a reasonably accurate conclusion, as distinguished from a mere guess or conjecture. *City*

*of Lincoln v. Realty Trust Group*, 270 Neb. 587, 705 N.W.2d 432 (2005). It is within the trial court's discretion to determine whether there is sufficient foundation for an expert witness to give his or her opinion about an issue in question. *American Central City v. Joint Antelope Valley Auth.*, 281 Neb. 742, 807 N.W.2d 170 (2011).

We conclude that the Workers' Compensation Court did not abuse its discretion in finding Malin's opinions had sufficient foundation. We reach this conclusion for several reasons. First, Good Samaritan makes some factually incorrect allegations regarding Malin's report. It claims Malin stated that Hynes did not experience hallucinations in her discussion of symptomology, but Malin's report notes that Hynes exhibited "an increase in intensity of symptoms of Major Depressive Disorder that featured frequent suicidality as well as emergence of psychotic symptoms, including hallucinations." Malin later states: "She continues to have fluctuating suicidality and intermittent hallucinations." Good Samaritan also alleges Malin was unaware that Hynes continued to work after the first incident, which occurred on April 16, 2008, but this is contradicted by the fact that Malin considered the second and third assaults that occurred while Hynes worked at Good Samaritan.

Another basis for our conclusion is Malin's statement that she formed her opinions following a detailed review of Hynes' psychiatric records. Those records detailed Hynes' personal and psychological history that Good Samaritan alleges was not considered by Malin. We have previously held that for purposes of determining whether a medical expert's testimony is admissible, it is acceptable, in arriving at a diagnosis, for a physician to rely on examinations and tests performed by other medical practitioners. *Carlson v. Okerstrom*, 267 Neb. 397, 675 N.W.2d 89 (2004). The defense expert, Davis, conceded that he used many—if not all—of Hynes' records as a basis for his opinion. Regardless of whether the information was disclosed in an in-person examination of Hynes or noted

in a report, we find that Malin possessed the relevant information by virtue of her review of Hynes' records.

Whether Malin possessed or considered the entirety of Hynes' personal or psychological history in forming her opinion ultimately concerns the weight to be given to Malin's opinions by a trier of fact, rather than the admissibility of the opinions. An appellate court is not a superexpert and will not lay down categorically which factors and principles an expert may or may not consider; such matters go to the weight and credibility of the opinion itself and not to its admissibility. *State v. Davlin*, 263 Neb. 283, 639 N.W.2d 631 (2002). Malin's opinions had sufficient foundation based on her review of Hynes' medical records and her in-person evaluation of Hynes.

## Causation

We next consider Good Samaritan's challenges to both the compensation court's and Malin's consideration of the second and third incidents in their analyses of Hynes' injuries. At trial, Good Samaritan conceded that the first incident resulted in physical injury and was compensable. At oral arguments, it conceded that the second and third incidents occurred. However, Good Samaritan claims that Hynes failed to present any evidence to demonstrate she suffered physical injuries associated with the second and third incidents and that, therefore, neither incident is compensable. Based upon this premise, it asserts that the second and third incidents were irrelevant to the determination of the causation of Hynes' injuries.

Good Samaritan's relevancy objection to Malin's report was based on Malin's consideration of the second and third incidents in forming her opinions regarding Hynes' injuries. These incidents were the basis of Malin's opinion that the injury sustained by Hynes in the first incident was exacerbated or aggravated by those incidents. As discussed in detail below, each incident was not required to be independently compensable to be considered by either Malin or the court.

[6,7] In order to recover under the Nebraska Workers' Compensation Act, a claimant has the burden of proving by a preponderance of the evidence that an accident or occupational disease arising out of and occurring in the course of employment proximately caused an injury which resulted in disability compensable under the act. *Manchester v. Drivers Mgmt.*, 278 Neb. 776, 775 N.W.2d 179 (2009). A worker is entitled to recover compensation for a mental illness if it is a proximate result of the worker's injury and results in disability. *Id*.

[8,9] A claim for a psychological or mental condition requires that the mental condition must be related to or caused by the physical injury. See *Zach v. Nebraska State Patrol*, 273 Neb. 1, 727 N.W.2d 206 (2007). An injury caused by a mental stimulus does not meet the requirement that a compensable accidental injury involve violence to the physical structure of the body. *Id.*

[10] On appellate review of a workers' compensation award, the trial judge's factual findings have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Visoso v. Cargill Meat Solutions*, 285 Neb. 272, 826 N.W.2d 845 (2013). Using this standard, we first review the compensation court's findings regarding the second incident. The court stated: "This Court finds that [Hynes] was a credible witness at this second trial. This Court finds the three incidents in this case happened as [Hynes] described." It also determined that "[t]here is evidence that the first and second assaults involved physical injury with psychological injury."

Good Samaritan argues that the compensation court erred in finding that Hynes suffered a physical injury in the second incident, because she did not present evidence of such injury. We disagree. Evidence was provided by Hynes' testimony and the notes of her employee assistance program counselor. Hynes testified that an assault occurred in which a patient bit her on her forearm, causing a welt and bruises, and then kicked her several times. The incident was reported to the counselor, who recorded the incident and symptomology in

her medical notes. The incident report noted bruising to Hynes' right forearm. That Hynes did not receive immediate medical treatment for a physical injury does not negate the fact that she sustained one.

[11] Good Samaritan claims that Hynes' testimony regarding the assault was self-serving, suggesting that the compensation court should not have accepted it. But this is a matter of witness credibility. As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Manchester v. Drivers Mgmt., supra*. We decline to second-guess the Workers' Compensation Court's acceptance of Hynes' testimony. Good Samaritan has not shown that the compensation court was clearly wrong in finding that Hynes suffered a physical injury during the second incident.

[12-14] Next, we consider the compensation court's inclusion of the third incident in its causation analysis. The issue is whether the court erred in considering the incident in its causation analysis notwithstanding the fact that the incident was not independently compensable. Good Samaritan claims that the court erred in "tying the three alleged incidents together and finding that [Hynes'] psychiatric issues flowed from some combination of them." The determination of causation is ordinarily a matter for the trier of fact. *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 408 N.W.2d 280 (1987). When the question is whether compensability should be extended to a subsequent injury or aggravation related in some way to the primary injury, the rules that come into play are essentially based upon the concepts of "direct and natural results." *Stacy v. Great Lakes Agri Mktg.*, 276 Neb. 236, 753 N.W.2d 785 (2008). A cause of an injury may be a proximate cause, notwithstanding that it acted through successive instruments of a series of events, if the instruments or events were combined in one continuous chain through which the force of the cause operated to produce the disaster. *Id.*

The compensation court found that "[t]he first (with physical injury) and the second and third incidents can combine in

one continuous chain through which the force of the cause operated to produce the totality of mental illness [Hynes] is suffering from." It further reasoned:

Although the third incident may not be an accident within the meaning of the Nebraska Worker's [sic] Compensation Act (if it were the only incident and not the third this would be an issue) the result of the continued abuse which happened in the workplace on the underlying compensable mental injury is compensable.

. . . .

. . . The Court does not view [Hynes'] claim to be for three separate accidents but rather . . . as an initial accident with two subsequent incidents which aggravated or cumulatively added to the damage and injury to [her] mental health which began with the first accident. In this regard there is clear evidence that the first assault with physical injury caused immediate mental difficulties for which [Hynes] sought treatment. There is evidence that the first and second assaults involved physical injury with psychological injury. . . . There is evidence in the record to support a finding that the third assault aggravated the preceding compensable injuries all of which injuries are compensable under the Nebraska Workers' Compensation Act.

The parties stipulated that the April 16, 2008, assault involved a physical injury and was independently compensable. In its analysis, the Workers' Compensation Court found that Hynes was not mentally stable or healthy after the first and second incidents and that her mental health deteriorated. This determination was not clearly wrong. A separate compensable injury for each and every work aggravation is not required if the initial cause of the injuries is a direct and natural result of the compensable injury. See *Stacy v. Great Lakes Agri Mktg., supra*.

Good Samaritan claims the facts of the present case are similar to *Sweeney v. Kerstens & Lee, Inc.*, 268 Neb. 752, 688 N.W.2d 350 (2004). We disagree. In *Sweeney*, the employee's

depression was entirely attributable to a loss of earning capacity report that the employee believed would have a negative impact on the litigation. There was no physical injury that was related to the employee's depression. We found that the worker's litigation stress was an intervening event which broke the causal connection between his depression and the original work-related accident and that, therefore, the psychological injury was unconnected to a physical injury. We distinguished *Sweeney* from our decision in *Kraft v. Paul Reed Constr. & Supply*, 239 Neb. 257, 475 N.W.2d 513 (1991), in which we affirmed an award of workers' compensation benefits to a worker whose traumatic neurosis was attributed to both his physical injury and the psychological loss resulting from the worker's immobility and inability to work.

In the case at bar, the psychological injuries resulted directly from an assault in which Hynes suffered a physical injury. The causation opinion was that Hynes' psychological injuries were the result of the physical injuries sustained during the assaults. In Malin's report, she stated:

> It is my opinion beyond a reasonable degree of medical and psychiatric certainty that . . . Hynes sustained both physical and psychological injury as a proximate result of the work-related assaults detailed in medical records. . . .
>
> The first assault on April 16, 2008, . . . resulted in both physical and psychological injury. . . .
>
> . . . .
>
> . . . Hynes went on to experience two other assaults by patients in May and June 2008 . . . . These caused cumulative trauma to her already fragile [PTSD] as had been rendered with the April assault.

Malin noted that "[t]he psychological injury that . . . Hynes sustained from this first assault . . . was apparent almost immediately." Hynes reported difficulty sleeping and eating and having fear of returning to the unit where the assault occurred. The symptoms worsened with persistent flashbacks and greatly affected her personal, occupational, and social

functioning. Malin determined those symptoms were consistent with acute stress disorder and PTSD, which eventually led to a major depressive disorder requiring several hospitalizations. She opined that Hynes was extremely cooperative with the evaluation and did not exhibit any common features of malingering. She further opined that Hynes has been unable to work since July 2008 and that all of Hynes' medical treatment and therapy needs were caused as a result of the injuries—both physical and psychological—that she sustained in the course of her employment.

[15,16] Good Samaritan argues, "At issue is whether there was sufficient competent evidence to support [Hynes'] alleged mental injuries . . . ." Brief for appellant at 1-2. In testing the sufficiency of evidence to support findings of fact made by the compensation court after rehearing, the evidence must be considered in the light most favorable to the successful party and the successful party will have the benefit of every inference reasonably deducible from the evidence. *Miller v. E.M.C. Ins. Cos.*, 259 Neb. 433, 610 N.W.2d 398 (2000). If the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, we are precluded from substituting our view of the facts for that of the compensation court. *Pearson v. Archer-Daniels-Midland Milling Co.*, 285 Neb. 568, 828 N.W.2d 154 (2013).

The record contains ample evidence to support the Workers' Compensation Court's findings. This includes Hynes' testimony as to the facts surrounding her injuries. The court found that "[Hynes] was consistently employed from 1992 through 2008 without significant or relevant incident either physical or mental. During this time she worked, was married and had a family." There is no indication that Hynes experienced symptoms of PTSD, major depressive disorder, or any other significant psychiatric problems in the 15 years prior to the initial assault in April 2008. Nor did she have any issues related to substance abuse in the decade prior to her injuries. Hynes required extensive treatment following the

three incidents, including electroconvulsive therapy, which Malin stated is "a treatment option of last resort for Major Depressive Disorders." We find sufficient evidence to support the court's determination that Hynes' injuries arose as a result of her work-related accident.

[17] Regarding the medical evidence, the compensation court found that Malin's evaluation was credible and reliable, and it adopted and relied upon her opinions. Malin opined that the treatment Hynes received was directly related to the assaults, that she has been incapable of working since the assaults, and that she will require future treatment. It is the role of the Workers' Compensation Court as the trier of fact to determine which, if any, expert witnesses to believe. *Ludwick v. TriWest Healthcare Alliance*, 267 Neb. 887, 678 N.W.2d 517 (2004).

[18] The Workers' Compensation Court was not clearly wrong in finding that Hynes' injuries were the result of the initial "accident" which occurred on April 16, 2008, with two subsequent incidents that aggravated or cumulatively added to the injury. Where the evidence is sufficient to permit the trier of fact to find that a psychological injury is directly related to the accident and the employee is unable to work, the employee is entitled to be compensated. *Worline v. ABB/Alstom Power Int. CE Servs.*, 272 Neb. 797, 725 N.W.2d 148 (2006).

## CONCLUSION

The Workers' Compensation Court was not clearly wrong in finding that Hynes suffered from major depressive disorder and PTSD as a result of her injury while working for Good Samaritan and that she was left permanently and totally disabled as a result. For the reasons stated above, we affirm the award of the compensation court.

AFFIRMED.

STEPHAN, J., not participating.