IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


FLORES V. MENARDS


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


BRENDA RAMOS FLORES, APPELLEE,

V.

MENARDS, APPELLANT.


Filed March 3, 2020.    No. A-19-539.


Appeal from the Workers' Compensation Court: THOMAS E. STINE, Judge. Affirmed.

Timothy E. Clarke and, on brief, Eric J. Sutton, of Baylor Evnen, L.L.P., for appellant.

No appearance for appellee.


PIRTLE, RIEDMANN, and BISHOP, Judges.

PIRTLE, Judge.

## INTRODUCTION

Menards appeals from an award entered by the Nebraska Workers' Compensation Court finding that Brenda Ramos Flores suffered an injury to her right shoulder in an accident arising out of and in the course of her employment with Menards, and awarded her benefits. Menards argues that there was no medical evidence to establish causation between her injury and her alleged work incident. Based on the reasons that follow, we affirm.

## BACKGROUND

On July 7, 2017, Flores filed a petition in the compensation court alleging that on February 17, 2017, she sustained an injury to her right shoulder in an accident arising out of and in the course of her employment with Menards and sought compensation benefits. She alleged that the accident occurred when she lifted a 16-foot oak rail overhead to stack it with others. As she did so, she felt a sharp pain in her neck, right arm, and right shoulder. Menards denied compensability for Flores'

- 1 -

claim, alleging that any injury to Flores' right shoulder was the result of the natural progression of a preexisting condition.

Trial was held on April 2, 2019. Flores had two witnesses testify: Dr. Jeffrey MacMillan, the surgeon who operated on her shoulder, and herself. Both parties presented multiple exhibits.

The evidence showed that on February 17, 2017, Flores was lifting a 16-foot oak rail above her head when she felt a sharp, stinging pain in her right shoulder. Flores reported the incident to a general manager, took over the counter pain medication, and continued her shift. The next day Flores went to "Quick Care Medical Services" because she was still having pain. She was diagnosed with an "unspecified sprain of right shoulder joint." Flores tried physical therapy and other forms of treatment for a while but was getting no relief from her pain. She had an MRI in May 2017 which showed that she had a "full-thickness rotator cuff tear of the supraspinatus." Flores had surgery on her right shoulder on September 1, performed by MacMillan. The surgery was successful, and in April 2018, Flores was released to return to work without restriction.

MacMillan testified that he first saw Flores on July 24, 2017, and at that time he did a physical exam and reviewed x rays and the MRI. He testified that the MRI showed that she had a degenerative tear of her supraspinatus tendon, which is one of four rotator cuff tendons. During the surgery, he discovered degenerative fraying of the under surface of the supraspinatus tendon. He explained that degeneration is a process that occurs over time and the symptoms associated with the process may "wax and wane." MacMillan testified that he was not prepared to provide any professional opinions as to the cause of Flores' shoulder injury.

Menards presented evidence attempting to prove that the rotator cuff tear and the need for surgery were solely related to a preexisting rotator cuff tear. The evidence showed that in 2008, Flores suffered an injury to her right shoulder while working for McDonald's. An April 2009 MRI showed Flores had a small full-thickness tear in her right rotator cuff. Another doctor who reviewed the MRI indicated that it was difficult to tell whether the tear in Flores' rotator cuff was a full or partial thickness tear. He noted that it was possible that it could be discovered in surgery that there was no tear at all.

Flores saw Dr. Mark McFerran in May 2009 for another opinion on her right shoulder and he diagnosed Flores with a "high-grade partial tear of the right supraspinatus." McFerran recommended surgery on her shoulder "with an arthroscopic decompression and a probable repair of the rotator cuff tear." Flores did not have surgery as recommended by McFerran.

Flores testified that she did not remember McFerran or any doctor recommending surgery to repair her shoulder prior to February 2017 and that she did not tell MacMillan about her previous right shoulder injury because she did not remember the injury. Flores also testified about the jobs she had between 2010 and the incident in February 2017, and such jobs required use of her right shoulder. She did not testify that she had any pain or limitation in her right shoulder during those years.

On cross-examination, MacMillan testified that Flores did not tell him about her 2008 right shoulder injury and that he was not aware she had a 2008 injury which was diagnosed as a rotator cuff tear or that surgery was recommended. He also testified that he had not reviewed MRI reports related to Flores' 2008 rotator cuff tear.

The evidence also included the opinions of Dr. Jonathan Buzzell, who performed an independent medical exam of Flores at Menards' request. In an April 2018 letter, Buzzell stated that Flores told him that she informed Menards when she was hired that she had a previous workers' compensation claim for her right shoulder and had been diagnosed with a rotator cuff tear. Buzzell noted in his letter that what Flores told him was contradicted by a clinic note from March 27, 2017, which indicated that Flores had no previous injury to her right shoulder. Flores further told Buzzell that she did not have any symptoms in her right shoulder when she began working at Menards. She also stated that prior to the January 2017 incident, she was working without restrictions.

Buzzell stated the following opinions in the April 2018 letter:

1. The current diagnosis of [Flores'] right shoulder injury is exacerbation of a chronic degenerative rotator cuff tear-right shoulder.

2. The above-referenced exacerbation of a pre-existing condition is attributable to her work injury at Menards on January 3, 2017 [sic]. This is a pre-existing condition, as documented by her 2008 and 2009 MRI scans.

. . . .

4. The surgery performed in 2017 is related to the pre-existing rotator cuff pathology. Based on [a doctor's] clinic note from March 27, 2017, the patient indicated that she had had no previous injury to her right shoulder. Any changes noted in the advancement of her rotator cuff pathology between 2009 and 2017 were minimal and can be attributed to the natural history of degenerative rotator cuff tears. There are no findings on her MRI from 2017 that would indicate any acute extension or further tearing of her pre-existing rotator cuff tear based on MRI findings.

. . . .

7. The impairment rating [of 4 percent] would be causally related to her initial injury of 2008, as this is the date when she tore her rotator cuff.

Menards asked Buzzell to clarify the above opinions in a followup questionnaire, wherein he stated:

[I]t is my opinion that [Flores] suffered a temporary exacerbation of her chronic pre-existing right shoulder injury as a result of the work accident at Menards on January 3, 2017 [sic], but that the need for surgery and any impairment or restriction associated with the shoulder, are most likely related to the natural regression of [Flores'] pre-existing degenerative rotator cuff tear. The basis for my opinion is more fully explained in paragraph 4 of my letter dated April 16, 2018.

Following trial, the compensation court found that based on the opinions of Buzzell, Flores sustained an injury to her right shoulder on February 17, 2017, while working for Menards and was entitled to benefits.

ASSIGNMENT OF ERROR

Menards assigns that the compensation court erred in awarding Flores benefits when no medical evidence established the required causation between her shoulder complaint and her alleged incident on February 17, 2017.

STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2018), an appellate court may modify, reverse, or set aside a compensation court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Hynes v. Good Samaritan Hosp.*, 291 Neb. 757, 869 N.W.2d 78 (2015). Determinations by a trial judge of the compensation court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence. *Id.*

On appellate review, the factual findings made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Gardner v. International Paper Destr. & Recycl.*, 291 Neb. 415, 865 N.W.2d 371 (2015). Causation of an injury or disability presents an issue of fact. *Id.* In testing the sufficiency of the evidence to support the findings of fact, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and we give the successful party the benefit of every inference reasonably deducible from the evidence. *Id.*

ANALYSIS

Menards assigns that the compensation court erred in awarding Flores benefits when no medical evidence established the required causation between her shoulder complaint and her alleged incident on February 17, 2017. It specifically argues that no doctor provided a causation opinion to connect Flores' need for surgery, impairment, and physiological changes to her 2017 work incident with Menards. The compensation court relied on Buzzell's opinions, but Menards contends that the court's decision actually contradicts Buzzell's opinions.

In a workers' compensation case, the claimant has the burden of proof to establish by a preponderance of the evidence that an unexpected or unforeseen injury was in fact caused by the employment. There is no presumption from the mere occurrence of such unexpected or unforeseen injury that the injury was in fact caused by the employment. Neb. Rev. Stat. § 48-151(2) (Reissue 2010).

Unless an injury's nature and effect are plainly apparent, a workers' compensation claimant must establish the causal relationship between the employment and the injury or disability by expert opinion. *Damme v. Pike Enters.*, 289 Neb. 620, 856 N.W.2d 422 (2014). Although a claimant's medical expert does not have to couch his or her opinion in the magic words "reasonable medical certainty" or "reasonable probability," the opinion must be sufficient to establish the crucial causal link between the claimant's injuries and the accident occurring in the course and

scope of the claimant's employment. *Id.* Appellate courts examine the sufficiency of a medical expert's statements from the expert's entire opinion and the record as a whole. See *id.*

In a workers' compensation case involving a preexisting condition, such as the present case, the claimant must prove by a preponderance of evidence that the claimed injury or disability was caused by the claimant's employment and is not merely the progression of a condition present before the employment-related incident alleged as the cause of the disability. *Damme v. Pike Enters., supra*. A workers' compensation claimant can recover benefits when an injury, arising out of and in the course of employment, combines with a preexisting condition to produce disability, even if no disability would have occurred absent the preexisting condition. *Id.* The "lighting up" or acceleration of a preexisting condition by an accident is a compensable injury. *Id.* And causation of an injury or disability presents an issue of fact. *Id.*

Menards argues that there was no expert opinion establishing that the claimed injury or disability was caused by Flores' employment with Menards and was not solely attributable to the progression of Flores' preexisting shoulder injury that was present before the Menards' incident. Menards relies on Buzzell's statement that "the need for surgery and any impairment or restriction associated with the shoulder, are most likely related to the natural regression of [Flores'] degenerative rotator cuff tear."

As previously noted, appellate courts examine the sufficiency of a medical expert's statements from the expert's entire opinion and the record as a whole. *Damme v. Pike Enters., supra.* Also, the factual findings made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Gardner v. International Paper Destr. & Recycl.*, 291 Neb. 415, 865 N.W.2d 371 (2015). Causation of an injury or disability presents an issue of fact. *Id.*

Buzzell's opinion that the need for surgery and any impairment or restriction associated with the shoulder were most likely related to the natural regression of Flores' degenerative rotator cuff tear was preceded by his opinion that Flores suffered a temporary exacerbation of her chronic preexisting right shoulder injury as a result of the work accident at Menards. Buzzell also stated in his initial letter that Flores' current shoulder diagnosis was an exacerbation of her degenerative rotator cuff tear, and that the exacerbation of her preexisting condition was attributable to her work injury at Menards.

The exacerbation started at the time of the Menards' incident on February 17, 2017, and as the compensation court found, there was no evidence that Flores' exacerbation resolved prior to surgery. The evidence showed that for approximately 8 to 9 years after the McDonald's work injury in 2008, Flores was employed and working at jobs that required the use of her right arm and shoulder. She worked as a concrete finisher and worked in nursing homes where she had to bathe residents, cook, clean, and generally care for residents. She also told Buzzell that she did not have any symptoms in her right shoulder when she began working at Menards and she stated that prior to the January 2017 incident, she was working without restrictions. There was no evidence that Flores had any pain or limitation in her right shoulder in the years prior to the Menards work incident in 2017. The evidence showed that Flores began to experience pain in her right shoulder when she lifted the rail over her head and that she continued to experience pain until after her surgery. In other words, it was not until the work incident at Menards that she started having pain

again in her right shoulder and she sought medical treatment for that pain, eventually having surgery.

In determining that Flores sustained an injury to her right shoulder on February 17, 2017, while working for Menards, the compensation court found:

> The nature and extent of the injury is an exacerbation of [Flores'] underlying chronic degenerative rotator cuff tear, which is the same thing as saying the accident accelerated or inflamed [Flores'] underlying condition. The Court finds that the exacerbation injury was a contributing factor to the medical care received by [Flores] after February 17, 2017, including the surgery performed by MacMillan.

Based on our review of the record and our standard of review, we conclude that there is sufficient competent evidence in the record to warrant the making of the award. We cannot say the compensation court was clearly wrong in finding that Flores sustained an exacerbation injury to her right shoulder on February 17, 2017, while working for Menards, and that such injury was a contributing factor to the medical care received by Flores after February 17, 2017, including the shoulder surgery.

CONCLUSION

We conclude that the compensation court did not err in finding that Flores suffered an injury to her right shoulder in an accident arising out of and in the course of her employment with Menards on February 17, 2017, and in awarding her benefits. Accordingly, the compensation court's award is affirmed.

AFFIRMED.